[Cite as *State v. Sari*, 2017-Ohio-2933.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


| | | |
|---|---|---|
| STATE OF OHIO, | **:** | **O P I N I O N** |
| Plaintiff-Appellee, | **:** | |
| - vs - | **:** | **CASE NO. 2016-L-109** |
| JESSICA M. SARI, | **:** | |
| Defendant-Appellant. | **:** | |


Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2016 CR 000170.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Anna C. Kelley*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Kevin M. Cafferkey*, 55 Public Square, Suite 2100, Cleveland, OH 44113; and *Barry T. Doyle*, 23811 Chagrin Boulevard, Suite 227, Beachwood, OH 44122 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Jessica M. Sari, appeals from the judgment of the Lake County Court of Common Pleas sentencing her to a prison term of eleven years; ordering her to pay restitution in the amount of $12,608.20, jointly and severally with her co-defendants; and imposing a mandatory fine of $7,500.00. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 2, 2016, an affidavit on complaint was issued in the Painesville Municipal Court alleging Ms. Sari had illegally conveyed prohibited items onto the grounds of a detention facility. Ms. Sari was 22 years old at the time of the offense and was being held at the Lake County Jail for a misdemeanor petty theft offense. Ms. Sari was subsequently bound over to the Lake County Court of Common Pleas on the charge.

{¶3} On June 2, 2016, Ms. Sari was indicted by the Lake County Grand Jury on three counts: Count One, Illegal Conveyance of Drugs of Abuse onto the Grounds of a Detention Facility, in violation of R.C. 2921.36(A)(2), a felony of the third degree; and Counts Two and Three, Corrupting Another with Drugs, in violation of R.C. 2925.02(A)(3), felonies of the second degree.

{¶4} Ms. Sari entered into a plea agreement with appellee, the state of Ohio. At Ms. Sari's plea hearing on August 11, 2016, the indictment was amended by agreement of the parties to reflect that imposition of a prison sentence is mandatory for Counts Two and Three.

{¶5} At the plea hearing, the prosecution stated the evidence would have shown, had the matter proceeded to trial, that on or about December 21, 2015, Ms. Sari did knowingly convey onto the grounds of the Lake County Jail, a detention facility, a drug of abuse, that being heroin, and did knowingly by any means, administer or furnish to another, or induce or cause another to use a controlled substance and thereby caused serious physical harm to the other person or caused them to be drug dependent.

{¶6} Specifically, the prosecution stated Ms. Sari and her co-defendants, Michael Beachler and Christine Martin, formulated a plan to bring heroin into the Lake

2

County Jail when appellant was released for a medical furlough. Christine, who was also being held at the Lake County Jail, placed several phone calls to a friend outside of jail between December 10 and December 17, 2015. Christine arranged for that friend to send a $200.00 money order to Michael, who was Ms. Sari's boyfriend at the time. On December 19, 2015, Ms. Sari spoke to Michael on the phone several times regarding the $200.00 and a transaction involving someone they referred to as "Hood." Ms. Sari was released from the jail on a medical furlough on December 21, 2015. Michael and his step-father picked up Ms. Sari from the jail, took her to her medical appointment, and returned her to the jail. Before Ms. Sari was booked into the jail, she concealed heroin inside her vagina. The heroin was then distributed to several other inmates, including Christine and Kristi Ellis; neither Christine nor Ms. Sari have specifically accepted responsibility for distributing the heroin to Kristi, but neither of them dispute that Kristi received a portion. The next day, December 22, 2015, Kristi was found deceased in her jail cell, and Christine was found unresponsive and required hospitalization after she was revived with Narcan.

{¶7} Ms. Sari orally admitted she was guilty of Count One and Amended Count Two. The parties also agreed that Amended Count Two would include both victims, Kristi and Christine. With approval of the parties, the trial court made a handwritten notation on the written plea of guilty under Amended Count Two that states, "including victim from Ct. 3." The state agreed to move to dismiss Amended Count Three at the time of sentencing and stated it would be recommending the maximum prison term for Count One and Amended Count Two.

{¶8} The trial court found Ms. Sari's guilty plea was knowingly, intelligently, and voluntarily made. The trial court accepted the plea and found Ms. Sari guilty of Count

3

One and Amended Count Two; Amended Count Three would be dismissed upon completion of sentencing.

{¶9} The matter was referred to the Lake County Adult Probation Department for preparation of a presentence investigation report ("PSI"), a drug and alcohol evaluation, and to obtain the necessary victim impact statement.

{¶10} Ms. Sari filed a sentencing memorandum in mitigation of her sentence. The memorandum discussed her genuine remorse, as Kristi had been a good friend of hers even outside the jail setting. It also discussed Ms. Sari's lack of a prior felony record or history of violence; her record includes only misdemeanors "consistent with a drug addict," ranging from possession of marijuana to petty theft. The memorandum also discussed a troublesome family history: when Ms. Sari was 15 years old, her father passed away from an accidental overdose of prescription methadone while she was asleep in an adjoining room of the house; not long before that, Ms. Sari was allegedly sexually abused by a carnival worker who was later imprisoned on similar charges brought by Ms. Sari's friend. The memorandum also mentioned Ms. Sari's extensive drug addiction history, beginning at an early age, which culminated in the daily use of heroin for over four years before her arrest. It also referenced Ms. Sari's complete psychiatric assessment developed by Dr. Amy Ginsberg, a forensic/clinical psychologist, and the statement made by a psychologist at the Lake County Psychiatric Clinic in her drug and alcohol evaluation report that Ms. Sari "needs extensive help" with her drug addiction. Finally, the memorandum discussed the sentences received by her co-defendants: Michael pled guilty to Illegal Conveyance and received 30 months in prison; Christine pled guilty to Illegal Conveyance and Attempted Corrupting Another with Drugs and received 7 years in prison. It further stated that a review of some of the

4

similar cases throughout Ohio shows a range of sentences between 2 and 8 years, most of which involve manslaughter convictions. News articles covering these similar cases and Dr. Ginsberg's psychological assessment were attached to the memorandum. In its conclusion, the memorandum stated, "[t]he defendant and her attorneys asks [sic] this Honorable Court to consider a sentence similar to Christine Martin."

{¶11} At Ms. Sari's sentencing hearing on September 22, 2016, the trial court heard from defense counsel on her behalf. They spoke extensively about the tragedy of her father's death and Ms. Sari's extensive struggle with drug addiction as a result. They also outlined Dr. Ginsberg's psychological assessment, which diagnosed Ms. Sari with major depressive disorder, post-traumatic stress disorder, and five different severe drug disorders (opioids, sedatives, alcohol, stimulants, and cannabis). They read into the record a portion of Dr. Ginsberg's report:

> From a psychological perspective, the above-mentioned factors constitute mitigating factors. It is my opinion that these factors warrant considerable consideration, at least with respect to the mitigation of the penalty for the alleged current offenses, especially given that these offenses are directly related to her mental health disorders, major depression and PTSD, as well as substance abuse issues.

{¶12} The trial court then heard from Ms. Sari's mother and sister. Ms. Sari also spoke on her own behalf, stating she was nine months sober at the time of the hearing. She acknowledged her fault for what happened and expressed remorse and guilt; she stated she experiences night terrors as a result of Kristi's death. Ms. Sari told the court she wants to better herself and utilize the available drug programs while in prison.

{¶13} The state outlined its position regarding aggravating sentencing factors, and Kristi's sister gave a victim impact statement on behalf of herself, Kristi's mother, and Kristi's five-year-old daughter.

{¶14} Defense counsel, in response to the trial court's inquiry, agreed he was requesting that the court impose a total prison term of 9 years. He stated Glenbeigh, a residential drug treatment facility, is willing and able to provide Ms. Sari with a place to stay when she is released. The state recommended the maximum prison term of 11 years, stating, in part, that "a message must be sent in cases like this that bringing drugs into our jail will not be tolerated here in Lake County."

{¶15} The trial court stated it had reviewed the PSI, the victim impact statement, the drug and alcohol evaluation, the psychological evaluation, his conference in chambers with counsel and the probation department, and the statements of Ms. Sari and her counsel.

{¶16} After a lengthy statement on the record regarding sentencing factors, discussed further below, the trial court sentenced Ms. Sari to the maximum term of imprisonment: three years on Count One and eight years mandatory on Amended Count Two, to be served consecutive to each other, for a total term of eleven years. The trial court also ordered Ms. Sari to pay restitution in the amount of $12,608.20, jointly and severally with Michael and Christine, and a mandatory fine of $7,500.00. The judgment of sentence was entered on September 28, 2016.

{¶17} Ms. Sari noticed a timely appeal and raises four assignments of error for our review, all of which relate to the imposition of her sentence:

> [1.] The trial court incorrectly analyzed the aggravating and mitigating factors set forth in R.C. 2929.12 and then imposed a sentence based on findings that were not supported by the record.

6

[2.] The trial court erred by imposing consecutive sentences when the court's findings were not supported by the record.

[3.] The trial court failed to adequately ensure that its total sentence was proportionate to sentences being given to similarly situated offenders who have committed similar offenses, particularly the accomplices in this case.

[4.] The trial court erred in imposing a mandatory fine.

{¶18} R.C. 2953.08(G) sets forth the standard of review for all Ohio felony sentencing appeals. It states, in pertinent part, that an "appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * (b) that the sentence is otherwise contrary to law." R.C. 2953.08(G)(2); *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶10, and *State v. Hettmansperger*, 11th Dist. Ashtabula No. 2014-A-0006, 2014-Ohio-4306, ¶14. Thus, an appellate court will not reverse a felony sentence unless it clearly and convincingly finds that the record does not support the trial court's findings. *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

**Sentencing Factors**

{¶19} Under her first assignment of error, appellant argues the trial court's findings under R.C. 2929.12 are not supported by the record, and thus her sentence is contrary to law.

{¶20} A court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12 to ensure the sentence complies with the overriding principles of felony sentencing provided in R.C. 2929.11. *See* R.C. 2929.12(A). The trial court, however, "is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the

7

applicable seriousness and recidivism factors (of R.C. 2929.12).'" *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000); *see also State v. McGinnis*, 11th Dist. Lake No. 2015-L-096, 2016-Ohio-1362, ¶8.

**{¶21}** In its judgment entry of sentence, the trial court stated it had considered the record, oral statements, any victim impact statement, the pre-sentence report, and the drug and alcohol evaluation submitted by the Lake County Adult Probation Department of the Court of Common Pleas, "as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12."

**{¶22}** R.C. 2929.12(B) sets forth factors the trial court must consider as indicating the offender's conduct is *more* serious than conduct normally constituting the offense. Ms. Sari contends the trial court incorrectly analyzed two of these factors: (1) that her relationship with the victims "facilitated" the offense and (2) that the offense was committed as a part of an "organized criminal activity." *See* R.C. 2929.12(B)(6)-(7).

**{¶23}** First, Ms. Sari argues her relationship with the victims did not "facilitate" the offense. She asserts that if we were to find this factor "is triggered under these circumstances, then virtually every distribution of drugs to a friend would invoke this factor." The state responds that the victims would never have received the drugs from Ms. Sari had they not had a relationship with her and that Christine arranged for the money order to pay for the drugs because of their relationship.

> To facilitate means to make easier. The American Heritage Dictionary (2 Ed.1985) 484. In order to have the relationship facilitate the offense, the defendant must have used his relationship with the victim to help commit the offense. In other words, the defendant must have used the relationship to allow him to commit

8

the offense in a manner which he could not have accomplished without the relationship.

*State v. Manley*, 3d Dist. Allen No. 1-11-04, 2011-Ohio-5082, ¶20, citing *State v. McDade*, 6th Dist. Ottawa Nos. OT-06-001, OT-06-004, 2007-Ohio-749, ¶54.

{¶24} Whether this factor was appropriately considered under the facts of this case can be fairly argued either way. We conclude, however, that the record supports the finding that Ms. Sari's relationship with Christine made it easier for her to obtain the heroin she then illegally conveyed into the jail and distributed to Christine. Ms. Sari may not have been able to obtain the heroin without Christine arranging for it to be purchased outside the jail. Even if we found this determination was made in error, it would be harmless considering the other seriousness and recidivism factors supported by the record.

{¶25} Next, Ms. Sari argues there was no "organized criminal activity" because this was an isolated incident. Ms. Sari argues it "was not a situation where the relationship between the actors was forged or even primarily existed as a means to commit crimes." The state responds that this finding is supported by the record because Ms. Sari and her co-defendants engaged in a fairly elaborate scheme that likely involved at least five individuals. In response to this argument, Ms. Sari replies: "If the scheme that took place in this case was sophisticated enough to be considered 'organized criminal activity' – an aggravating circumstance under subsection (B), then [Ms. Sari's] limited role must also be taken into account in mitigation."

{¶26} The mere fact that Ms. Sari had accomplices "is insufficient to establish that [she] engaged in organized criminal activity." *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶85, citing *State v. Roberson*, 141 Ohio App.3d 626, 633 (11th Dist.2001). Rather, to support a finding of organized criminal activity, the record

9

must demonstrate that Ms. Sari and her accomplices *planned* to engage in the crimes. *Id.*, citing *State v. Bradford*, 11th Dist. Lake No. 2001-L-175, 2003-Ohio-3495, ¶28. There is more than ample evidence in the record to support a finding that Ms. Sari, Christine, Michael, and others planned to engage in these crimes; it was premeditated, not spontaneous. Additionally, the record does not support the assertion that Ms. Sari played merely a limited role in the crimes with which she was charged: she obtained the drugs while on a medical furlough, inserted them into her vagina, physically conveyed them into the jail, and handed them over to Christine for further distribution. This argument is not well taken.

{¶27} R.C. 2929.12(C) sets forth the following factors the trial court must consider as indicating the offender's conduct is *less* serious than conduct normally constituting the offense:

> (1) The victim induced or facilitated the offense.
>
> (2) In committing the offense, the offender acted under strong provocation.
>
> (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
>
> (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶28} Ms. Sari contends the trial court erred by not finding that one of the victims, Christine, helped facilitate the offense. We agree with the state that it was not error for the trial court to find this factor because the deceased victim, Kristi, did not help facilitate the offense. Ms. Sari further contends that the trial court erred in failing to find that she did not expect to cause physical harm to anyone. We agree with the state that this was not error, because Ms. Sari did in fact cause physical harm to persons and

10

because the contention that she did not expect to cause physical harm is belied by the act of providing someone with heroin, a drug that has recently caused the death of countless individuals in this area. These arguments are not well taken.

{¶29} R.C. 2929.12(D) & (E) set forth factors the trial court must consider in determining the likelihood of recidivism. The factors that indicate an offender is *less* likely to commit future crimes include that the offender shows genuine remorse for the offense. R.C. 2929.12(E). The trial court noted that Ms. Sari is genuinely remorseful, and Ms. Sari does not raise an argument as it pertains to factors indicating recidivism is less likely.

{¶30} The factors that indicate the offender is *more* likely to commit future crimes include:

> (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing; was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code; was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code; was under transitional control in connection with a prior offense; or had absconded from the offender's approved community placement resulting in the offender's removal from the transitional control program under section 2967.26 of the Revised Code.
>
> (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.
>
> (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

R.C. 2929.12(D).

{¶31} The trial court found four of these factors were present: (1) the crime was committed while under a municipal court sentence, for which Ms. Sari had been furloughed; (2) Ms. Sari has a criminal and juvenile history of offenses and adjudications; (3) Ms. Sari has a long-term addiction to drugs; and (4) Ms. Sari has repeatedly failed to respond favorably to previously imposed sentences. Ms. Sari contends the trial court's analysis of these factors was incorrect.

{¶32} First, she asserts the trial court afforded her criminal and juvenile delinquency history too much weight because the offenses were all misdemeanor crimes, she was serving her first term of incarceration, and the PSI stated her criminal history indicated a low risk of recidivism. A "trial court is not required to give any particular weight or emphasis to a given set of circumstances" when considering the statutory factors. *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23. This argument is not well taken.

{¶33} Next, Ms. Sari contends her drug abuse history should not be considered as a risk for recidivism because she has acknowledged her pattern of abuse and has not refused treatment. Ms. Sari further contends her failure to respond to previously imposed sanctions should not be considered because it is a consequence of her cycle of drug abuse and recovery, not due to stubbornness or refusal to accept help. Although Ms. Sari has acknowledged her pattern of abuse, there is evidence in the record—namely, her own statements to the trial court during the plea hearing and to the

probation department during the PSI—that she has failed on numerous occasions to complete treatment for her addiction. These arguments are not well taken.

{¶34} Finally, Ms. Sari contends that she committed the instant offenses while serving a misdemeanor sentence; the aggravating factor, however, only applies when a defendant is serving a felony sentence. The state concedes the presence of this factor was found by the trial court in error. Notwithstanding, we hold the error is harmless and does not warrant reversal in light of the presence of the other seriousness and recidivism factors. With this single exception, we conclude the trial court's findings under R.C. 2929.12 are supported by the record and are not contrary to law.

{¶35} Ms. Sari's first assignment of error is without merit.

## Consecutive Sentences

{¶36} Under her second assignment of error, Ms. Sari argues the trial court's findings in support of the imposition of consecutive sentences are not supported by the record.

{¶37} R.C. 2929.14(C)(4) provides that a trial court may require an offender to serve consecutive prison terms only if it finds "that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part

13

of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶38} Although a trial court must make the statutory findings to support its decision to impose consecutive sentences, it has no obligation to set forth its reasons to support its findings as long as they are discernible in the record. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶28-29; *State v. Jenkins*, 8th Dist. Cuyahoga No. 101899, 2015-Ohio-2762, ¶9. "If the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we 'clearly and convincingly' find '[t]hat the record does not support the court's findings[.]'" *Venes*, *supra*, at ¶19, quoting R.C. 2953.08(G)(2).

{¶39} The trial court satisfied the requisite R.C. 2929.14(C)(4) findings in this case both at the sentencing hearing and in its entry. It stated in its judgment entry:

> Pursuant to R.C. 2929.14(C)(4) and R.C. 2929.19(B)(2)(b), the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the Defendant's conduct and the danger the Defendant poses to the public, and that the Defendant committed one or more of the multiple offenses while serving a municipal court jail sentence, and/or the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

On the record, the trial court stated:

> Consecutive sentences are necessary to protect the public and punish this offender. Consecutive sentences would not be disproportionate to the defendant's conduct and the danger she poses. The crimes here were committed while under a jail sentence. The harm was so great or unusual that a single prison term would not adequately reflect the seriousness, and the defendant's criminal history shows that consecutive terms are needed to protect the public from future crime.

14

{¶40} We find that the imposition of consecutive sentences is a decision supported by the record. Although she is not a drug dealer who preys on the addictions of others for profit, Ms. Sari does pose a danger to society in that she was willing to bring a dangerous drug into a government facility charged with keeping many other members of society safe. Although she did not specifically intend Kristi's death or Christine's overdose, these were natural and foreseeable consequences of Ms. Sari's decision to convey heroin into the facility. The trial court also noted the need for general and specific deterrence of this type of crime.

{¶41} Ms. Sari argues consecutive sentences are disproportionate to the seriousness of her conduct because the sentences imposed on her co-defendants were not as long. We address this specific argument under her third assignment of error.

{¶42} Ms. Sari states consecutive sentences are not appropriately based on subsection (a) because she was not under a sanction imposed for a felony offense at the time she committed the instant offense. We agree the record does not support this particular finding by the trial court, as Ms. Sari was under a sanction imposed for a misdemeanor offense. We find Ms. Sari's argument as to this factor is well taken. Notwithstanding, the error is harmless and does not warrant reversal in light of the trial court's other findings.

{¶43} Ms. Sari states the finding under subsection (b) may be supported by the record because the loss of life is a great loss under any circumstance, but that consecutive sentences should not be based solely on this fact because she did not intend to cause Kristi's death. We cannot consider this factor, however, as the trial court did not include it in its judgment entry of sentence. *See State v. Eichele*, 11th Dist. Geauga No. 2015-G-0050, 2016-Ohio-7145, ¶11, citing *Bonnell, supra*, at ¶37

15

("While no talismanic words are required, the findings must be made both at the sentencing hearing, and in the judgment entry of sentence."). Regardless, the trial court did not order consecutive sentences based solely on this fact; it also found subsection (c) applied to Ms. Sari's situation.

{¶44} Regarding subsection (c), Ms. Sari states consecutive sentences were not appropriate because the probation department determined "criminal history" was a low domain in Ms. Sari's risk of recidivism analysis. This determination does not belie the fact that the record supports the trial court's finding that Ms. Sari's criminal history shows consecutive terms are needed to protect the public from future crime. Regardless of the misdemeanor level of her previous offenses, Ms. Sari does have a criminal and juvenile delinquent history. And although these offenses were non-violent, not all of them were victim-less crimes.

{¶45} Accordingly, the trial court made the requisite findings warranting the imposition of a consecutive sentence in this case, and its findings are supported by the record.

{¶46} Ms. Sari also argues the trial court failed to begin its analysis of the various sentencing factors by considering whether it was sufficient to impose concurrent sentences as opposed to consecutive sentences. She states in her appellate brief that "the record must confirm that the trial court first considered imposing concurrent sentences and then decided to impose consecutive sentences based on the statutorily mandated criteria." She draws support for this argument from *State v. Edmonson*, 86 Ohio St.3d 324 (1999).

{¶47} In *Edmonson*, the Ohio Supreme Court found the trial court erred in imposing more than the minimum sentences because it did not specify either of the

16

statutory factors found in former R.C. 2929.14(B) as supporting its deviation from the minimum sentence: "With this record, there is no confirmation that the court first considered imposing the minimum three-year sentence and then decided to depart from the statutorily mandated minimum based on one or both of the permitted reasons." *Id.* at 328. Contrary to Ms. Sari's position, this statement did not mandate that a trial court must confirm on the record that it first considered imposing the minimum sentence under former R.C. 2929.14(B). It is simply an explanation as to how that particular trial court's imposition of sentence was not supported by the scant record and lack of findings in that case. It also does not apply to the trial court making statutory findings under R.C. 2929.14(C)(4) before imposing consecutive sentences. Making the statutory findings under R.C. 2929.14(C)(4) implies that the trial court is aware of its burden to overcome the presumption of concurrent sentences—it is not necessary to explicitly state on the record that it is taking on that burden. Such a requirement would be as pointless as requiring a trial court to say, "I must weigh prejudice versus probative" before ruling on an evidentiary motion during trial.

{¶48} Even if such a requirement existed, the trial court would have satisfied it here. Prior to its application of the sentencing factors and imposition of sentence, the trial court stated the following at Ms. Sari's sentencing hearing:

> The Court has also considered the overriding purposes of felony sentencing pursuant to Revised Code 2929.11, which are to protect the public from future crime by this offender and others similarly situated and to punish this offender *using the minimum sanctions that the Court determines accomplish the purposes*, without imposing an unnecessary burden on state or local governmental resources. I have considered the need for incapacitation, deterrents, rehabilitation and restitution. [Emphasis added.]

{¶49} This argument is not well taken.

{¶50} Ms. Sari's second assignment of error is without merit.

17

**Proportionality**

{¶51} Under her third assignment of error, Ms. Sari contends the trial court imposed a sentence disproportionate to sentences being imposed for similarly situated offenders committing similar offenses, particularly her co-defendants in this case. She asserts this assignment of error has merit because the trial court erred in its consideration of the statutory purposes and factors of felony sentencing. The state responds that the trial court is not required to note any reason why Ms. Sari should be punished more than her co-defendants and that Ms. Sari was the one who bore culpability for physically smuggling the drugs into the jail.

> (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
>
> (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

R.C. 2929.11.

{¶52} "[T]he goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve 'consistency' not 'uniformity.'" *State v. Palicka*, 8th Dist. Cuyahoga No. 93766, 2010-Ohio-3726, *2, citing *State v. Klepatzki*, 8th Dist. Cuyahoga No. 81676, 2003-Ohio-1529, ¶32. "[A] consistent sentence is *not* derived from a case-by-case comparison[.]" *State v. Swiderski*, 11th Dist. Lake No. 2004-L-112, 2005-Ohio-6705, ¶58 (emphasis

18

added). To the contrary, it is well established that consistency in sentencing is accomplished by the trial court's application of the statutory sentencing guidelines to each individual case. *See, e.g., State v. Latimer*, 11th Dist. Portage No. 2011-P-0089, 2012-Ohio-3745, ¶20, citing *Swiderski*, *supra*, at ¶58. Thus, in order to show a sentence is inconsistent with sentences imposed on other offenders, a defendant must show the trial court failed to properly consider the statutory purposes and factors of felony sentencing. *Id. See also State v. Simpson*, 11th Dist. Lake No. 2016-L-014, 2016-Ohio-7746, ¶28.

**{¶53}** We have already held, with one harmless error exception, that the trial court properly considered the R.C. 2929.12 sentencing factors. The trial court also stated it considered the R.C. 2929.11 purposes and principles of felony sentencing in finding it necessary to incarcerate Ms. Sari, and that Ms. Sari is not amenable to an available community control sanction. Finally, the trial court made the necessary findings under R.C. 2929.14(C)(4) in support of its decision to impose consecutive sentences.

**{¶54}** Ms. Sari requested the trial court sentence her to a term of nine years, closer to the seven years Christine received for her role in the crime, instead of the eleven years recommended by the state. We acknowledge the pervasive argument throughout Ms. Sari's appeal that her sentence is simply not just; that she is a young, non-violent offender who needs extensive help for her drug abuse issues. Nevertheless, considering the serious consequences of the instant offenses and her level of culpability in physically transporting the contraband into the jail, we do not find Ms. Sari's eleven-year prison sentence is disproportionate or inconsistent with other offenders sentenced under the same statutory guidelines, including her co-defendants.

19

**{¶55}** Ms. Sari's third assignment of error is without merit.

## Mandatory Fine

**{¶56}** Under her final assignment of error, Ms. Sari argues she should not have been subjected to a mandatory fine of $7,500.00 because she does not have the present ability to pay, as required by R.C. 2929.18.

> For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section.

R.C. 2929.18(B)(1). For a felony of the second degree, the maximum statutory fine amount is $15,000.00. R.C. 2929.18(B)(3)(b). Therefore, the mandatory portion of the fine for a second-degree felony is $7,500.00. "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." R.C. 2929.18(B)(1).

**{¶57}** "Therefore, the decision to impose a fine is not a discretionary one but, rather, a mandatory requirement for the trial court where the defendant has not filed an affidavit of indigency with the court prior to sentencing." *State v. Grissom*, 11th Dist. Lake No. 2001-L-107, 2002-Ohio-5154, ¶30. "[T]he language in R.C. 2929.18(B)(1) is 'clear and unambiguous in requiring that an affidavit of indigency must be "filed" with the court prior to sentencing.' Moreover, 'the fact that the affidavit was not properly filed prior to sentencing is, standing alone, a sufficient reason to find that the trial court committed no error by imposing the statutory fine.'" *Id.* at ¶32, quoting *State v. Gipson*, 80 Ohio St.3d 626, 633 (1998).

20

{¶58} Ms. Sari argues that her PSI indicated she was indigent. That indication, however, is solely based on Ms. Sari self-reporting a lack of income and assets; it is not a finding made by the probation department or the trial court based on an affidavit or other evidence. More importantly, Ms. Sari did not file an affidavit of indigency prior to sentencing nor did she offer any evidence of indigency in her sentencing memorandum. Therefore, Ms. Sari never invoked the statutory procedure established for waiving the mandatory fine.

{¶59} Ms. Sari's fourth assignment of error is without merit.

{¶60} We do not clearly and convincingly find that the record fails to support the trial court's findings underlying its imposition of sentence. The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.